NOT DESIGNATED FOR PUBLICATION

No. 126,214

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

BRUCE S. SPRINGSTEEN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY DONOVAN, judge. Submitted without oral argument. Opinion filed May 31, 2024. Affirmed in part and dismissed in part.

*Darby VanHoutan*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Following Bruce S. Springsteen's no-contest plea to one count of attempted sexual exploitation of a child, the district court sentenced him to a total of 68 months in prison and imposed lifetime postrelease supervision. On appeal, Springsteen contends that the district court improperly engaged in judicial fact-finding to enhance the length of his postrelease supervision term from 60 months to life. Specifically, he argues that the district court inappropriately found that he was 18 years of age or older at the time he committed the offense. Springsteen also contends for the first time on appeal that the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq., is

1

unconstitutional. For the reasons set forth in this opinion, we decline Springsteen's invitation to consider the constitutionality question that was not presented to the district court, and we affirm his sentence.

FACTS

The parties are familiar with the facts, and we need not recite them in this opinion. Instead, we will summarize the facts that are material to the issues presented on appeal. We will address additional facts as necessary in the Analysis portion of our opinion.

On July 31, 2022, the State filed 14 charges of sexual exploitation of a child against Springsteen for offenses alleged to have been committed on June 19, 2022. Soon after being charged, Springsteen executed a financial affidavit for indigent defense services. In the affidavit—which he signed under penalty of perjury—he certified he was 65 years of age with a birth year of 1957.

Pursuant to a plea agreement, Springsteen pled no contest to one count of attempted exploitation of a child. He also stipulated to violating the terms of his probation in a prior case involving attempted exploitation of a child. In exchange for Springsteen's plea, the State agreed to dismiss the remaining charges in this case. The parties also agreed to jointly recommend that the district court impose a 68-month sentence consecutive to the original sentence in his prior case.

The day before Springsteen entered his plea, he executed a plea advisory form in which he again explicitly represented that he was 65 years of age. Moreover, in the same document, Springsteen acknowledged by his initials and signature that he understood his term of postrelease supervision would be for life and that he would be required to register as a sex offender under KORA for "Life." Additionally, Springsteen executed a "Notice of Duty to Register" form and a "Notification of Procedural Requirements of the

2

Offender Registration Act" form. In signing the "Notice of Duty to Register" form, Springsteen again represented his year of birth as 1957. Likewise, both forms indicated that by entering his plea to one count of attempted sexual exploitation of a child, he would be required to register under KORA for life.

At the plea hearing, the district court extensively questioned Springsteen on the record regarding his understanding of the terms of the agreement and the voluntariness of his actions. As part of the plea colloquy, the district court informed Springsteen of his duty to register under KORA for life, and Springsteen orally stated that he understood. Springsteen then entered a plea of no contest, which the district court accepted. After entering his plea, Springsteen reaffirmed that he had reviewed and signed the plea advisory form, the notice of duty to register form, and the notification of the requirement to register as a sex offender under KORA. Furthermore, when the district court ruled that Springsteen be subject to lifetime registration under KORA, he did not object.

On March 6, 2023, the district court held a sentencing hearing. At the hearing, Springsteen agreed that he had reviewed his presentence investigation (PSI) report and that he had no objection to its contents. We note that the PSI report also confirmed that he was 65 years old when he committed his crime of conviction. Based on the PSI report, the district court found his criminal history score to be A. Both parties then recommended that the district court sentence Springsteen according to the terms of the plea agreement.

Ultimately, the district court followed the recommendations set forth in the parties' plea agreement and sentenced Springsteen to 68 months in prison to be followed by lifetime postrelease supervision. The district court also ordered that Springsteen register under KORA for the remainder of his life.

ANALYSIS

The first issue presented by Springsteen on appeal is whether the district court improperly participated in judicial fact-finding when it found that he was over the age of 18 when he committed his crime of conviction. Springsteen argues that because the district court found him to be over the age of 18 at the time the crime was committed, his postrelease supervision period was lengthened in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Specifically, he suggests that it was improper for the district court to find he was over the age of 18 because he did not waive his right to have his age proven beyond a reasonable doubt by a jury.

In response, the State points out that the record is replete with representations made by Springsteen that he was born in 1957 and that he was 65 years old when he committed the crime to which he pled no contest. These representations were made in several documents presented to the district court including the plea advisory form and the PSI report that Springsteen agreed was accurate. In support of its position, the State cites several cases that have rejected similar—if not identical—arguments as those raised by Springsteen in this case. In the alternative, the State argues that even if we determine that an *Apprendi* violation occurred, such an error would be harmless considering the representations made by Springsteen to the district court regarding his age.

Whether a sentencing court violated a defendant's constitutional rights under *Apprendi* raises a question of law over which our review is unlimited. *State v. Huey*, 306 Kan. 1005, 1009, 399 P.3d 211 (2017). Here, the district court imposed lifetime postrelease supervision under K.S.A. 22-3717(d)(l)(G)(i), which provides that a person imprisoned for committing a sexually violent crime "when the offender was 18 years of age or older . . . shall be released to a *mandatory* period of postrelease supervision for the duration of the person's natural life." (Emphasis added.) It is undisputed that under

4

Kansas law that attempted sexual exploitation of a child is a sexually violent crime. See K.S.A. 21-5510(a)(2); K.S.A. 22-3717(d)(5)(I) and (O).

In *Apprendi*, the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court explained that the "'statutory maximum'" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Significantly, the Supreme Court held in *United States v. Booker*, 543 U.S. 220, 244, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), that facts established by a guilty plea and admitted by a defendant could elevate a sentence without violating *Apprendi*.

In addition, the Kansas Supreme Court has held that a plea to a sexually violent crime provides a basis to order lifetime postrelease supervision without violating the rule established in *Apprendi*. *State v. Walker*, 275 Kan. 46, 51, 60 P.3d 937 (2003). Furthermore, numerous panels of this court have held that a district court may rely on a defendant's representations that he or she was at least 18 years old when the sexually violent crime was committed to order lifetime postrelease supervision without violating *Apprendi*. See *State v. Conkling*, 63 Kan. App. 2d 841, 844, 540 P.3d 414 (2023); *State v. Entsminger*, No. 124,800, 2023 WL 2467058, at *8 (Kan. App.) (unpublished opinion), *rev. denied* 317 Kan. 847 (2023); *State v. Reinert*, No. 123,341, 2022 WL 1051976, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 762 (2022); *State v. Schmeal*, No. 121,221, 2020 WL 3885631, at *9 (Kan. App. 2020) (unpublished opinion); *State v. Zapata*, No. 120,529, 2020 WL 741486, at *5, 8-9 (Kan. App. 2020) (unpublished opinion) (finding no *Apprendi* violation when defendant admitted his age in documents entered into evidence in conjunction with his plea).

In *Conkling*, the defendant pled no contest to one count of rape and one count of aggravated indecent liberties with a child and was sentenced to lifetime postrelease supervision. The defendant made a similar argument to the one being made by Springsteen in this case. Our court rejected this argument because the defendant had represented to the district court that he was over 18 years of age when he committed the crime in a financial affidavit submitted to the district court, in his signed plea agreement, and at the plea hearing. Because he formally represented to the district court that he was over 18 years of age by his own admissions, the district court did not deprive the defendant of his constitutional rights under *Apprendi* when it ordered lifetime postrelease supervision. 63 Kan. App. 2d at 845.

Springsteen attempts to distinguish his case from others decided by this court by claiming that he "never admitted his age at the time of the alleged offense during a judicial proceeding." However, in *Zapata*, this court denied an argument nearly identical to the one presented in this appeal. Like this case, the defendant in *Zapata* acknowledged that he was over the age of 18 years old on several documents before he entered his guilty plea, and he did so again in his acknowledgment of rights and entry of plea. 2020 WL 741486, at *5, 8-9. As a result, this court found the information in the documents presented to the district court constituted undisputed evidence that the defendant admitted he was 18 years old or over at the time he committed the crime. 2020 WL 741486, at *8-9.

In this case, the record on appeal contains several documents in which Springsteen represented—both before and after entering his plea—that he was born in 1957, that he was 65 years old, and that he was over the age of 18 years. It is undisputed that Springsteen committed his crime in June 2022. Just over a month later, he signed a financial affidavit seeking the appointment of legal counsel in which he represented that he was 65 years of age and that he was born in 1957. Likewise, in his plea advisory form, Springsteen swore that he was 65 years of age. Then, he signed a notice of duty to

6

register form representing that his birthdate is July 10, 1957. In numerous signed documents and statements to the court, Springsteen acknowledged that he would be subject to lifetime postrelease supervision.

Subsequently, at his plea hearing, he affirmed that he had reviewed and executed those documents. In particular, the district court asked Springsteen about the plea advisory form, and he confirmed that he had initialed all 22 paragraphs confirming that he understood its contents. Finally, at his sentencing hearing, Springsteen represented to the district court that he had reviewed his PSI report—which listed his age as 65—and he confirmed he had no objections to any of the information contained in the report.

Accordingly, given Springsteen's repeated representations to the district court regarding his age throughout the criminal proceedings, we find it was not necessary to present the question of whether he was 18 years or older when he committed the sexually violent crime to a jury. Likewise, we find that Springsteen's constitutional rights under *Apprendi* were not violated under the circumstances presented here. As a result, we conclude that the district court did not err in ordering lifetime postrelease supervision following Springsteen's plea of no contest to attempted sexual exploitation of a child.

Even if the district court had committed an *Apprendi* error, we note that any such error would be harmless. As the United States Supreme Court has held, such an error is subject to a harmless error analysis. *Washington v. Recuenco*, 548 U.S. 212, 222, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). Moreover, both the United States Supreme Court and the Kansas Supreme Court have held that *Apprendi* violations do not automatically require reversal. 548 U.S. at 220-22; *State v. Garza*, 290 Kan. 1021, 1031, 236 P.3d 501 (2010). See *State v. McClanahan*, No. 125,272, 2023 WL 6324904, at *7 (Kan. App. 2023) (unpublished opinion) (finding harmless error when defendant's age was easily proved and he did not contend there was some evidence that he was less than 18 years old).

7

The harmless error analysis requires that "[a] reviewing court must determine whether the record contains evidence that would lead to a contrary finding regarding the defendant's age. If the answer to that question is 'no,' any error in not submitting the issue of defendant's age to a jury may be held harmless." *Schmeal*, 2020 WL 3885631, at *11 (citing *State v. Reyna*, 290 Kan. 666, 681-82, 234 P.3d 761 [2010]). As discussed above, the record reflects that Springsteen never disputed his age, his date of birth, or that he was over the age of 18 when he committed the sexually violent crime. Thus, we find that the record confirms that Springsteen was well over the age of 18 when he committed the crime.

Next, Springsteen argues that the provisions of KORA—specifically K.S.A. 22-4907—are unconstitutional because they violate the compelled speech doctrine under the First Amendment to the United States Constitution. Springsteen concedes that he did not raise this issue before the district court. Even so, he invites us to address the issue because it purportedly involves only a question of law on proved or admitted facts, and consideration of the claim is necessary to prevent the denial of fundamental rights. See *State v. Allen*, 314 Kan. 280, 283-84, 497 P.3d 566 (2021).

Several panels of our court have found that it is not prudential to address a constitutional challenge to KORA when the issue was not first presented to the district court for consideration. In addition, despite Springsteen's assertion that this issue involves purely a question on proved or admitted facts, it is quite possible that the resolution of this issue would involve the presentation of evidence and fact-finding. See *State v. Spilman*, 63 Kan. App. 2d 550, 574-77, 534 P.3d 583 (2023) (declining to address challenges to constitutional compelled speech and equal protection challenges to KORA raised for the first time on appeal); *State v. Sears*, No. 125,031, 2024 WL 1228869, at *13 (Kan. App. 2024) (unpublished opinion) (declining to address the issue the first time on appeal because it involves fact-finding on the issue of strict scrutiny); *State v. Harpe*, No. 124,732, 2023 WL 5992237, at *8 (Kan. App. 2023) (unpublished opinion), *rev.*

8

*denied* 318 Kan. ___ (February 2, 2024); *State v. Pearson*, No. 125,033, 2023 WL 2194306, at *1-2 (Kan. App. 2023) (unpublished opinion), *rev. denied* 318 Kan. __ (March 24, 2024); *State v. Masterson*, No. 124,257, 2022 WL 3692859, at *2 (Kan. App.) (unpublished opinion) (noting that the compelled speech argument related to KORA is "legally and fatally flawed"), *rev. denied* 316 Kan. 762 (2022).

Had Springsteen asserted this issue below, the State would have been required to show a compelling governmental interest that justified restricting his First Amendment rights. However, because he did not do so, the record does not contain any facts related to the existence of a compelling governmental interest or the lack thereof to provide us with guidance on resolving this issue. As such, we decline to address this issue for the first time on appeal.

Finally, Springsteen argues that KORA—specifically K.S.A. 22-4908—violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the statute allows some offenders to petition to remove themselves from the registry and others cannot do so. Once again, Springsteen failed to raise this issue below. Even so, he urges us to address the issue for the first time on appeal because it purportedly involves only a question of law on proved or admitted facts, and consideration of the claim is necessary to prevent the denial of fundamental rights. See *Allen*, 314 Kan. at 283.

Similar to the previous issue, panels of this court have been reluctant to address an equal protection argument for the first time on appeal because the resolution of the issue requires additional fact-finding. *Sears*, 2024 WL 1228869, at *14; *Harpe*, 2023 WL 5992237, at *9.

In *Sears*, this court explained:

9

"Appellate courts apply a rational basis test to equal protection challenges to a criminal statute when there is no suspect class at issue. See *State v. Huerta*, 291 Kan. 831, 834, 247 P.3d 1043 (2011). Statutes 'may treat similarly situated individuals differently, without violating equal protection, if the classifications distinguishing individuals bear a rational relationship to a legitimate government objective.' *Harpe*, 2023 WL 5992237, at *9. The party challenging constitutionality bears the burden of showing more than one set of facts in which the classifications of similarly situated individuals does not advance a government interest. 'Under the rational basis standard, the party asserting that the statute is unconstitutional has the burden to negate "'every conceivable basis which might support'" the classification.' *Alliance Well Service, Inc. v. Pratt County, Kansas*, 61 Kan. App. 2d 454, 476, 505 P.3d 757 (2022).

"Like the defendant in *Harpe*, Sears 'failed to bring this challenge before the district court' thus 'the record is simply not sufficiently developed to allow us to conduct an adequate rational basis analysis.' See *Harpe*, 2023 WL 5992237, at *9." *Sears*, 2024 WL 1228869, at *14.

We agree with the rationale of the *Sears* opinion. Here, additional facts would need to be considered to resolve Springsteen's equal protection challenge. This is because a rational basis analysis requires an examination of facts surrounding similarly situated individuals and the rational relationship—or lack thereof—to a legitimate government objective. See *Crawford v. Kansas Dept. of Revenue*, 46 Kan. App. 2d 464, 471, 263 P.3d 828 (2011). In addition, the party challenging the constitutionality of the statute under equal protection grounds has the burden to negate "'every conceivable basis which might support'" the classification. *Alliance Well Service, Inc. v. Pratt County, Kansas*, 61 Kan. App. 2d 454, 476, 505 P.3d 757 (2022) (quoting *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, 253, 930 P.2d 1 [1996]). Consequently, we decline to consider the issue for the first time on appeal.

Affirmed in part and dismissed in part.